FILED
 2014 Mar-19  PM 12:32
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| PHILIP LEE SMITH, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) Case No.  4:13-cv-00057-HGD |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER, SOCIAL SECURITY | ) |
| ADMINISTRATION, | ) |
| | ) |
| Defendant | ) |

**MEMORANDUM OPINION**

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits (hereinafter DIB) and Supplemental Security Income (hereinafter SSI).  (Doc.1).  The parties filed written consent and this action has been assigned to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.  (*See* Doc. 14). Upon consideration of the administrative record and the memoranda of the parties, the court finds that the decision of the Commissioner is due to be affirmed and this action dismissed.

**I.     Proceedings Below**

Plaintiff filed an application for a period of disability and disability insurance benefits on October 1, 2009, in which he alleged that he became unable to work on August 1, 2009. On March 1, 2010, these claims were initially denied by the agency. On April 13, 2010, plaintiff requested a hearing before an Administrative Law Judge (ALJ) which took place on August 30, 2011. On September 23, 2011, the ALJ issued a decision denying plaintiff's application. The Appeals Council denied plaintiff's request for review on November 6, 2012. After the Appeals Council denied plaintiff's request for review of the ALJ's decision, that decision became the final decision of the Commissioner and, therefore, a proper subject of this court's appellate review. 42 U.S.C. §§ 405(g) and 1383(c)(3).

**II.    ALJ Decision**

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that

significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ first must determine the claimant's residual functional capacity (RFC), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work, 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove

the existence in significant numbers of jobs in the national economy that the claimant can do given the RFC, age, education and work experience. 20 C.F.R. §§ 404.1520(g) and 404.1560(c).

The ALJ strictly adhered to this decision-making protocol. He concluded that plaintiff has the following severe impairments: degenerative disc disease, degenerative joint disease of the bilateral knees, scoliosis, asthma, gout and obesity. (Tr. 13). Although the ALJ acknowledged that plaintiff has a documented history of psychological problems, he adopted the findings of the state agency psychologist consultant, Dr. Robert Estock, M.D., and determined that plaintiff's mental impairments are not severe. (Tr. 14).

The ALJ concluded that, despite the above-stated impairments, plaintiff has the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. § 416.967(a).[1] However, the ALJ also found that plaintiff's subjective complaints of chronic pain levels of from mild to moderate to be credible. Even considering plaintiff's RFC and the chronic pain, a Vocational Examiner (VE)

---

[1] Sedentary work involves lifting no more than 10 pounds at a time, with occasional lifting or carrying of articles such as docket files, ledgers or small tools, and occasional walking or standing. 20 C.F.R. §§ 404.1567(a) and 416.967(a).

testified that there were jobs in the economy for which plaintiff was qualified. (Tr. 17). Therefore, the ALJ found that he was not disabled. (Tr. 18).

### III.   Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Brown*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, re-evaluate the evidence or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates

against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## IV.   Plaintiff's Claims

Plaintiff asserts that the decision of the ALJ is not based on substantial evidence because the ALJ gave controlling weight to the testimony of two physicians whose reports showed no severe impairments as of January 2010, but did not consider that plaintiff's collapsed disc was only discovered by MRI testing in August 2011. Based on this, plaintiff also claims that the hypothetical question posed to the VE did not comprise all of plaintiff's impairments. Plaintiff also asserts that he has physical and mental impairments which severely limit his ability to achieve ongoing employment without multiple absences of up to three or four days per week.

## V.   Discussion

Plaintiff bears the ultimate burden of proving disability. *See* 42 U.S.C. § 423(d)(1)(A), (5); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The evidence reflects that plaintiff was 38 years old at the time the ALJ issued his decision. Plaintiff has a high school education and past relevant work as a construction laborer, convenience store cashier, fast food worker, stamping-press

machine operator and distribution-center clerk.  (Tr. 18, 28-32, 87, 122-23, 128).  Plaintiff alleges disability beginning on August 1, 2009, due to congenital birth defects in both knees, back and neck pain, and shoulder pain.  (Tr. 33, 122).

The ALJ also found, after considering the effects of plaintiff's depression, anxiety and post-traumatic stress disorder, that these impairments do not cause more than minimal work-related limitations.  According to the ALJ, the evidence reflected that plaintiff had a mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation.  Because plaintiff's medically determinable mental impairments cause no more than "mild" limitations in any of three relevant functional areas and he had ho episodes of decompensation which have been of extended duration in the fourth relevant area, it is non-severe.  *See* 20 C.F.R. § 416.920a(d)(1).

Plaintiff testified that he has a history of psychological problems.  He also acknowledged spiraling downward with the use of illicit substances and abuse of prescription medication.  The ALJ noted that, while there is some confluence currently between plaintiff's ongoing physical limitations and his psychological problems, the psychological problems are primarily reactive rather than severely limiting conditions on their own.  According to the ALJ, the state agency

psychological consultant, Dr. Robert Estock, M.D., determined that plaintiff's mental impairments were non-severe and assessed plaintiff with only mild restrictions in the first three functional areas, as well as no episodes of decompensation. (Respondent's Ex. 13F). The ALJ agreed with these findings. (Tr. 14).

The ALJ further noted that plaintiff has had no repeated episodes of decompensation, has not been diagnosed with any residual disease process that would cause decompensation with only minimal increases in mental demands, has no history of requiring a highly supportive living environment, and has not displayed an inability to function outside of his home. Because no impairment causes no more than minimal functional limitations, the ALJ determined that plaintiff's depression is non-severe. *See* 20 C.F.R. § 416.921.

Plaintiff testified at the hearing that he is unable to work due to chronic pain in his knees, lower back, neck and left shoulder. He stated that he was born with a congenital defect in his knees for which attempted surgical correction provided little relief. He indicated that he has typical pain of 5 to 6 daily, on a pain scale of 1 to 10, but up to 7 or 8 on a bad day. He acknowledged that he could lift and carry weights up to 20 pounds. He also related his depression to his ongoing physical difficulties and chronic pain.

According to the ALJ, the medical record confirms that plaintiff has had a long history of difficulties with his bilateral knees. (Tr. 15, citing Respondent's Exs. 1F-5F, 9F-10F, 15F-17F and 19F). The ALJ also noted that an MRI in August 2011 revealed that plaintiff has a collapsed disc at L5, with posterior facet arthropathy. (Tr. 15, citing Respondent's Ex. 17F). Likewise, plaintiff was recently diagnosed with gout. (Tr. 15, citing Respondent's Ex. 19F).

On January 13, 2010, consultative examiner Ken Hager, M.D., described plaintiff's scoliosis as mild and described his knee degeneration as mild to moderate. (Ex. 9F). With regard to plaintiff's spine, Dr. Hager interpreted the results of x-rays and opined that plaintiff was suffering from lower facet degenerative joint disease with moderate disc space height loss at L5/S1 and possible spondylolisthesis and/or spondylosis. He noted that there was no distinct acute process. (Tr. at 305; Respondent's Ex. 9F).

A consultative examination by Sathyan V. Iyer, M.D., on January 16, 2010, reflects that plaintiff complained about problems with both knees, stating that both tend to pop and cause pain. Plaintiff also stated that he was experiencing left lower back pain with radiation to the left lower leg, along with numbness over the left thigh region. He also stated that he could not raise his shoulder much and could not carry things in his left hand. (Tr. at 307; Respondent's Ex. 10F). Dr. Iyer's examination

reflected that plaintiff has some limitations in his left shoulder but has a full range of motion of the spine and both hips. Dr. Iyer also described plaintiff's knees as having no significant swelling, deformity, tenderness or laxity. A grating noise was heard under the kneecap when the knees move. However, he also noted that plaintiff has a full range of motion of both knees; his gait is normal; and he can walk on his heels and tiptoes, and can squat partially. (Tr. at 309; Respondent's Ex. 10F). In his comments, Dr. Iyer stated that plaintiff may have some impairment of functions involving overhead activities, carrying, climbing and squatting. However, he did not find significant limitations of functions involving sitting, standing, walking, handling, hearing or speaking. Finally, he noted that alcohol overuse may impair many of his functions. (*Id.*). The ALJ states that these functional limitations are appropriately addressed by setting plaintiff's RFC at the sedentary level. (Tr. at 15).

The ALJ also determined that plaintiff suffered from obesity and considered it in terms of possible effects on his ability to work. In this case, the ALJ determined that plaintiff's obesity is not so severe as to prevent all ambulation, reaching, orthopaedic and postural maneuvers. However, he found that it does, in combination with plaintiff's degenerative disc disease, degenerative joint disease of the bilateral knees, scoliosis, asthma and gout, significantly reduce his ability to stand and walk, stoop or bend, and to maintain postures without the need for alteration. He concluded

that this warranted a reduction to only sedentary work and that these functional limitations are accounted for by establishing this level as plaintiff's RFC.

The ALJ determined that plaintiff's medically determined impairments could reasonably be expected to cause the alleged symptoms. However, he held that plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment. For instance, the ALJ found that plaintiff's assertion that he is completely incapable of engaging in any type of sustained competitive work is not supported by the medical evidence within the record. (Tr. at 16).

The ALJ considered the findings of Dr. Hager and Dr. Iyer and noted that Dr. Iyer only suggested some minimal functional limitations, while Dr. Hager offered none. However, the ALJ found their medical records to be useful in determining the full scope of plaintiff's limitations. Therefore, they were accorded substantial weight. (*Id.*).

With regard to plaintiff's claimed psychological impairments, the ALJ considered the findings of consultative examiner Mary Arnold, Psy.D., and the findings of state agency psychological consultant Dr. Estock, and gave both substantial weight. According to the ALJ, because their findings are uncontradicted

by other objective medical evidence, and because they had access to plaintiff's entire medical record, their findings were given substantial weight. (Tr. at 16).

The ALJ next considered plaintiff's past relevant work and held that he is unable to perform such work because it exceeds his sedentary residual functional capacity as determined by the ALJ. While the ALJ found that plaintiff had the RFC to perform the full range of sedentary work, he also found that his subjective complaints of chronic levels of mild to moderate pain were credible. Therefore, to determine the extent to which these additional limitations erode the unskilled sedentary occupational base, the ALJ asked the VE whether jobs exist in the national economy for an individual with plaintiff's age, education, work experience and RFC. Given all these factors, the VE opined that plaintiff would be able to perform all the requirements of occupations such as information clerk/posting clerk/telephone answering clerk, telephone order sales representative, and surveillance system monitor. According to the VE, all these jobs are available in substantial numbers in both the state and national economies. (Tr. at 17). Based on these findings, the ALJ found that plaintiff was "not disabled."

Plaintiff first complains that the ALJ gave controlling weight to the testimony of two physicians whose reports showed no severe impairments. However, this is incorrect. Based on the reports of these physicians, the ALJ found that plaintiff has

severe impairments including degenerative disc disease, degenerative joint disease of the bilateral knees, scoliosis, asthma, gout and obesity. (Tr. 13). Plaintiff also claims that the ALJ did not consider that plaintiff's collapsed disc was only discovered by MRI testing in August 2011. However, this is also incorrect. While not specifically described as a collapsed disc, Dr. Hager noted that x-rays of plaintiff's spine reflected that he was suffering from lower facet degenerative joint disease with moderate disc space height loss at L5/S1 and possible spondylolisthesis and/or spondylosis. Thus, Dr. Hager noted the space height loss at L5/S1, even though he did not describe it as a fully collapsed disc at that point. Despite this condition, Dr. Iyer indicated that plaintiff had a full range of motion at his spine and hips.

While plaintiff complains that "a collapsed disc is a very severe impairment," he provides no testimony to support this and does not suggest what additional limitations would be appropriate given the applicable level of severity. The mere existence of an impairment does not reveal the extent to which it limits a claimant's ability to work or undermine the ALJ's determination in that regard. *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). "The 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). None of the medical

evidence reflects that plaintiff's collapsed disc has any more effect on plaintiff's ability to work than that found by the ALJ.

Based on the foregoing, the court finds that the ALJ's determination that Smith retained sufficient RFC to perform work at a sedentary level was supported by substantial evidence. *See Martin*, 894 F.2d at 1529 ("[e]ven if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence."). Thus, to the extent that Smith points to other evidence which would undermine the ALJ's RFC determination, his contentions fall outside the narrowly circumscribed nature of appellate review of ALJ decisions in such cases, which preclude "re-weigh[ing] the evidence or substituting our judgment for that [of the Commissioner] . . . even if the evidence preponderates against" the decision. *Bloodsworth*, 703 F.2d at 1239.

Plaintiff next alleges that the ALJ should have included specific limitations from Dr. Iyer's opinion in the hypothetical question to the VE, instead of finding that those limitations did not significantly reduce the occupational base. (Plaintiff's Brief at 9). Dr. Iyer described to some functional limitations for plaintiff relating to overhead reaching, carrying, climbing and squatting. According to plaintiff, the ALJ should have asked the VE whether those functional limitations were appropriately

addressed within a sedentary residual functional capacity before omitting them from his hypothetical questions.

The ALJ limited plaintiff's carrying, climbing, and squatting by limiting plaintiff to sedentary work. Sedentary work

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out the job duties. Jobs are sedentary if walking and standing are required occasionally and all other sedentary criteria are met.

20 C.F.R. § 416.967(a). Thus, the regulation demonstrates that carrying, climbing and squatting are limited by the amount of weight to be carried and the amount of time standing. In addition, Social Security Regulation (SSR) 83014 states that "to perform substantially all of the exertional requirements of most sedentary jobs, a person would not need to crouch and would need to stoop only occasionally." SSR 83-14, 1983 WL 31254 (S.S.A. 1983).

Likewise, while Dr. Iyer states that plaintiff "may" have some limitation on his overhead activities, carrying, climbing and squatting, he does not elaborate as to what these limitations are or their severity. (Tr. at 309). However, even if he had included a limitation on overhead activities, this would not be a significant limitation on all reaching as to significantly reduce the sedentary occupational base. *See* SSR 85-15, 1985 WL 56857 (defining reaching as extending hands and arms in *any* direction and

stating *significant* limitations of reaching may eliminate a large number of occupations). Dr. Iyer found that plaintiff had no limitations with regard to reaching with his right arm. With regard to plaintiff's left arm, Dr. Iyer found that his range of motion for abduction (moving the arm up and to the side of the body) was 90 degrees; whereas, normal range of motion for abduction is up to 150 degrees. Plaintiff was limited in the forward elevation of his left arm to 80 degrees; whereas, the normal range of motion for forward elevation is 150 degrees. In all other respects, Dr. Iyer found plaintiff's left shoulder to be within the normal range of motion. (Tr. at 311). Furthermore, plaintiff testified that his left arm hurt but that he could lift and carry things with it. (Tr. at 43). Consequently, while plaintiff had some limitations with regard to his left arm, he had none with regard to his right arm. Thus, he did not have a "significant" limitation of reaching. Therefore, the ALJ did not err in failing to include this limitation in his hypothetical questions to the VE beyond that encompassed by asking the VE to assume that there was a limitation to sedentary work.

      Plaintiff also asserts that he has mental and physical limitations which severely limit his ability to achieve ongoing employment without multiple absences. (Plaintiff's Brief at 9-10). He alleges that the ALJ erred by not including anything about work absences in his hypothetical questions to the VE. (*Id.* at 10).

Plaintiff testified that his depression is so severe that it was hard for him to get out of bed three or four days a week. (Tr. at 39). Plaintiff was examined by Mary Arnold, Psy.D., on January 2, 2010. She diagnosed him as suffering only from Adjustment Disorder, NOS and Personality Disorder, NOS. (Tr. at 315; Ex. 11F). Likewise, Dr. Robert Estock, M.D., the state agency psychological consultant, found that plaintiff's mental problems were not severe. He found that his restrictions on daily living, difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence or pace caused by mental problems were mild and that he had no episodes of decompensation of an extended duration. (Tr. at 334; Ex. 13F). While plaintiff asserts that it is "hard to get out of bed some days," he has cited no prior work history or other evidence demonstrating this as a fact. Because the ALJ found that plaintiff's depression, anxiety and post-traumatic stress disorder did not establish more than minimal work-related limitations, it was not erroneous to fail to include these limitations in his hypothetical questions. *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

## VI.   Conclusion

Upon review of the administrative record, and considering all of Mr. Smith's arguments, the court finds the Commissioner's decision is supported by substantial

evidence and in accord with the applicable law. Therefore, that decision is to be AFFIRMED. A separate order will be entered.

DONE this 19th day of March, 2014.

_____
HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE